A98A0474. IN THE INTEREST OF A. H. P. et al., children.
(500 SE2d 418)

RUFFIN, Judge.

Appellant, the mother of A. H. P., K. D. P., J. A. M. and C. M. M., appeals from the juvenile court's order terminating her parental rights in her children. The mother argues on appeal that she was denied effective assistance of counsel and that the trial court erred in denying her a continuance until the time she is released from incarceration. For reasons which follow, we affirm.

On appeal from a termination of parental rights, this Court reviews the evidence in the light most favorable to the appellee. *In the Interest of R. D. S. P.*, 230 Ga. App. 205 (495 SE2d 867) (1998). The

record in this case reveals that the mother's two sons, C. M. M. and J. A. M., were born January 14, 1991 and April 14, 1993, respectively. The mother admitted to smoking marijuana during the first four months of her pregnancy with J. A. M. In September 1993, the mother pleaded guilty to writing a bad check and was placed on probation. Then, on December 11, 1994, the mother gave birth to A. H. P., a girl. A. H. P. had cocaine in her system at the time of her birth. These three children were removed from the mother's home on December 13, 1994 because (1) her house was "unclean and inappropriate to raise children due [to] health concerns[,]" (2) the mother had a prior criminal history and abused drugs, and (3) the mother used cocaine during her pregnancy with A. H. P. On December 15, 1994, the juvenile court found that probable cause existed to show that the children were deprived and therefore placed them in the custody of the Department of Family & Children Services ("DFCS").

On January 25, 1995, the juvenile court issued a temporary placement order which required the mother to complete an in-patient drug treatment program, maintain a stable residence, maintain steady employment, not violate the law, remain drug free and complete a parenting skills class. In January 1996, the juvenile court held the mother in contempt for failing to meet any of the requirements set forth in its January 25, 1995 order. Subsequently, on February 1, 1996, the mother pleaded guilty to prostitution and the trial court ordered that she be placed in a substance abuse treatment program. In April 1996, the mother was kicked out of the treatment program for using cocaine.

From the time A. H. P., C. M. M., and J. A. M. were removed from her care in December 1994 until April 19, 1996, she visited nine times with C. M. M. and J. A. M., who resided in the same foster home. She visited A. H. P. only seven times in that period. She missed two visits with A. H. P. and four visits with her two sons. She did not visit with the children after April 19, 1996.

On May 7, 1996, the mother gave birth to K. D. P., the fourth child at issue. There was evidence that the mother used drugs approximately ten days before K. D. P.'s birth. Two days after the birth, the juvenile court removed K. D. P. from her mother's care. Thereafter, the mother never visited with K. D. P.

In June 1996, the mother was convicted of theft by shoplifting and received 12 months probation. She was convicted on another count of shoplifting in September 1996 and received three years probation. On December 2, 1996, a Florida court convicted the mother of possession of cocaine. Finally, in January 1997, she pleaded guilty to violating the Georgia Controlled Substances Act and theft by receiving stolen property. The trial court sentenced her to five years with two to serve in prison.

In October 1996, DFCS petitioned the juvenile court to terminate the mother's rights in her four children. Evidence from the March 19, 1997 termination hearing showed that the mother failed to abide by and complete case reunification plan goals, which required her to, inter alia, remain drug/alcohol free, maintain a steady income, maintain a hazard-free home and demonstrate proper parenting skills. The mother failed to complete a drug rehabilitation program prior to her incarceration and had yet to undergo drug rehabilitation or vocational training while incarcerated. Since the time the children were placed in DFCS custody, the mother has made no child support payments. The mother admitted at the hearing that since she graduated from high school, she has never maintained steady employment for longer than eight months. As well, she has never maintained her own residence for longer than two to three months. The mother and her children lived with her mother for a period of time prior to the children's removal from her care. She admitted that her mother paid for the children's clothing and food, as well as paying the house mortgage and utility bills. However, her mother died on January 10, 1997 and is no longer available to take care of the children or assist the mother with their care.

Regarding A. H. P. and K. D. P., the mother testified that they "do not know who I am, and I think it would be extremely selfish on my part to take them away from the only mother they know, being [the foster mother]. When they look for Mama, it's not me that they look to." She added that "I will willingly give [A. H. P. and K. D. P.] up. . . ."

Given all the evidence, including the mother's criminal history, incarceration, drug addiction, failure to provide adequately for her children, and failure to comply with any of the reunification case plan goals, the juvenile court terminated the mother's rights in her four children.

1. During the termination hearing, the mother's appointed attorney requested a continuance until the mother was released from prison, which he argued was in the near future. The mother's attorney said that it would be "manifestly unfair" to proceed while "she is not in a position to properly address the Court as to her abilities to continue to care for the children. . . ." The State argued that there was no need for a continuance where there was no certain parole or release date and where such a delay would not be in the best interest of the children. The juvenile court denied the continuance, and the mother raises this as error on appeal.

" 'All applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require.' [Cit.]" *In re C. M.*, 179 Ga. App. 508, 510 (2) (347 SE2d 328) (1986).

In *In re C. M.*, DFCS sought to terminate a father's parental rights in his children. Prior to the termination hearing, the father entered an in-patient addiction program. The father sought a continuance for three to six months. His "motion for continuance was predicated on the assertion that his attending physicians at the hospital 'would be material witnesses' on his behalf in the event he were successful in overcoming his alcoholism through his participation in the program." Id. We ruled that the "father's potential for overcoming his alcoholism, which had existed throughout the four years the children had been in foster care, was insufficient to require the grant of a continuance in this case." Id.

Similarly, in this case the mother requested the juvenile court to postpone the termination hearing in order for her to obtain favorable evidence — such as her drug rehabilitation, vocational training and freedom from incarceration — not in existence at the time of the hearing. See id. The mother's potential for overcoming her drug addiction, which had existed during the entire time her children were in foster care, was insufficient to warrant a continuance. Id. The possibility that she might receive vocational training also did not require a continuance, given that she had never maintained steady employment, had never paid child support for the children while they were in DFCS custody, and had relied on her mother to take care of the children prior to their removal from her care. There was further no evidence that with the training she would be able to maintain a steady income and a stable home environment. In sum, there was simply no evidence on which the juvenile court could rely in determining that a continuance would make any difference in the outcome of the case.

Moreover, the mother's inability to present herself as she would have liked at the termination hearing — as a free woman — was "due to her own inability to conform to the law," and thus a continuance was not justified. *In the Interest of M. G. F.*, 222 Ga. App. 816, 817-818 (476 SE2d 100) (1996). Accordingly, we find the juvenile court did not abuse its discretion in denying the mother's motion for continuance. See *In re C. M.*, supra.

2. Following the termination hearing, the mother moved for a new trial, asserting that her appointed counsel was ineffective because he failed to present the expert testimony of a penologist or toxicologist. At the hearing on the motion, the mother also argued that her counsel erred in failing to determine her release date from prison and to present a reunification plan during the termination hearing.

In response, the appointed counsel testified at the motion for new trial hearing that he had been involved in approximately 20 prior termination hearings and he had never called a penologist or a

toxicologist. Furthermore, he noted that in his experience, termination of a parent's rights is not necessarily linked to the parent's incarceration; in various cases a parent's rights were terminated although the parent was not in jail. He stated that the mother in this case was sentenced just prior to the date of the termination hearing here, and so he believed that her release date would not have been in the near future. Moreover, the evidence showed that no release date had been set as of the date of the hearing.

The trial court denied the motion for new trial and the mother asserted her ineffective assistance of counsel claim on appeal. The State argues that the mother was not entitled to effective assistance of counsel as the termination hearing was a civil action rather than a criminal trial. Although we disagree with the State's argument, we affirm the juvenile court's termination order.

While "termination of parental rights cases are more civil in nature than criminal[,] [cit.] . . . . parents facing termination of their rights have been afforded some of the protections to which criminal defendants are entitled. See, e.g., *Nix v. Dept. of Human Resources*, 236 Ga. 794, 796 (225 SE2d 306) (1976) (indigent parent has right to appointed counsel.)." *In the Interest of S. M. L.*, 228 Ga. App. 81, 83 (4) (a) (491 SE2d 186) (1997). With regard to the right to counsel, OCGA § 15-11-85 (b) provides that "[i]f the parent or parents of the child desire to be represented by counsel but are indigent, the court shall appoint an attorney for such parent or parents. . . ." Moreover, the Supreme Court, citing former Ga. Code Ann. §§ 24A-1701 (d) and 24A-2001 (a) (currently OCGA §§ 15-11-26 (e) and 15-11-30 (b)), has held that "[i]t is thus quite evident that the entire legislative scheme written into the pertinent provisions of the Juvenile Code was intended to provide to an indigent parent effective representation at all stages of any proceeding involving the termination of that parent's right to his or her child." *Nix*, supra at 796. Accordingly, the mother was entitled to effective representation. See, e.g., *Cain v. Dept. of Human Resources*, 166 Ga. App. 801, 803 (4) (305 SE2d 492) (1983).

"In order to prevail on a claim of ineffective assistance of counsel [the mother] must show that [her] counsel's performance was deficient and that the deficient performance was prejudicial to [her] defense. *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)). To meet the first prong of this test, [the mother] must overcome the strong presumption that counsel's performance fell within a wide range of professional conduct and that counsel's decisions were not made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances

of the case. The second prong requires [the mother] to show there is a reasonable probability that, absent counsel's unprofessional errors, the result of the trial would have been different." (Citations and punctuation omitted.) *Brown v. State*, 268 Ga. 354, 357 (4) (490 SE2d 75) (1997).

" '[A]s to deficient performance, errors in judgment and tactical errors do not constitute denial of effective assistance of counsel. (Cit.)' [Cits.]" *Smith v. State*, 207 Ga. App. 290, 291 (2) (428 SE2d 95) (1993). We find that appointed counsel's decision not to call a penologist or toxicologist amounted to trial strategy and trial tactics, not ineffective assistance of counsel. See *Austin v. Carter*, 248 Ga. 775, 779 (2) (c) (285 SE2d 542) (1982).

Additionally, the mother has failed to show that, but for counsel's alleged error in failing to determine her release date, her rights in her children would not have been terminated. *Brown*, supra. Accordingly, the mother has not shown that she was denied effective representation and the trial court did not abuse its discretion in denying her motion for new trial. *Brown*, supra; see *Lisle v. Willis*, 265 Ga. 861, 864 (3) (463 SE2d 108) (1995) ("The trial court's decision on a motion for a new trial will be upheld on appeal unless it was an abuse of discretion.").

*Judgment affirmed. Beasley, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 20, 1998.

*Robert S. Devins*, for appellant.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Sanders B. Deen*, for appellees.

