644 S.E.2d 339 (2007)
In the Interest of E.G.
No. A06A1944.
Court of Appeals of Georgia.
March 27, 2007.
*341 Melanie D. Fenwick Thompson, for Appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Sr. Asst. Atty. Gen., Jerry W. Thacker, Charissa Ann Ruel, Asst. Atty. Gen., for Appellee.
BARNES, Chief Judge.
The mother of E.G. appeals the termination of her parental rights. On appeal, she argues that there was no clear and convincing evidence of parental misconduct or ability, there was insufficient evidence of current deprivation or the likelihood of future deprivation, there was insufficient evidence that termination was in the best interest of the child, and that she was denied effective assistance of counsel. Upon review, we affirm the termination.
On appeal, we review the evidence in a light most favorable to the lower court's judgment and determine only whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. We defer to the juvenile court's factfinding and thus neither weigh the evidence nor evaluate witness credibility.
(Citation and punctuation omitted.) In the Interest of J.K., 278 Ga.App. 564, 564-565, 629 S.E.2d 529 (2006).
So viewed, the evidence shows that when E.G. was born on February 26, 2003, the DeKalb County Department of Family and Children Services (DFACS) received a report that the mother had been diagnosed with a major depressive disorder with psychotic features. Her mental state was questionable, her other children were in the custody of her father, and she did not have any appropriate living arrangements for her newborn. DFACS filed a deprivation complaint alleging the baby was without proper parental care or control, and took E.G. into immediate custody. On March 3, 2003, the juvenile court entered a shelter care order granting DFACS custody. On March 7, 2003, DFACS filed a deprivation petition, and following a March 17, 2003 hearing, the juvenile court found E.G. deprived and granted DFACS temporary custody. This order was not appealed.
The mother's reunification case plan required that she, among other things, follow treatment recommendations of mental health providers, take prescribed medication, schedule and keep appointments with parent aides and service workers, attend a parenting skills assessment, and obtain stable housing, income, and childcare services. The plan noted that the mother had been hospitalized in May 2003 to "address mental health needs," was released in July of that year, and was currently seeking aftercare services. A family assessment was done during this time and it was noted that the mother had not been taking her medication as prescribed before her latest hospitalization, she did not have a support network in place to assist her with E.G., she lives with her mother and younger brother and sleeps on a fold-out cot, she was previously hospitalized for depression in 2001, and E.G. was at high risk for neglect if he were returned to the mother. A psychologist who evaluated the mother opined that "there were no indications that [the mother] is inherently incapable of providing adequate parenting," but recommended that any attempts at reunification be contingent upon her receiving "ongoing psychiatric and psychological intervention, including therapy and any needed medication."
An August 2003 review panel recommended reunification, noting that the mother was exercising her visitation, was currently employed, and had attended a few parenting classes. The panel submitted a revised case plan which was incorporated into a supplemental order in September 2003, in which the juvenile court continued custody of E.G. with DFACS. The psychiatrist treating the mother evaluated her in September 2003 and noted that she was compliant with her treatment, and believed that her psychiatric condition should not present an impediment to her ability to care for E.G.
In January 2004, DFACS moved for an extension of the deprivation order for another *342 year, which the juvenile court granted following an April 12, 2004 hearing. The mother had another psychiatric evaluation before the hearing and the doctor noted that the mother had completed parenting classes but was depressed and experiencing hallucinations. He opined that she had a major depressive disorder with psychotic features, in full remission with the need to rule out a psychotic disorder. She was attending psychotherapy on a regular basis and was compliant with her medication. The juvenile court continued custody with DFACS and approved reunification as the permanency plan. This order was not appealed.
A July 29, 2004 case plan revealed that the mother had not made any progress in obtaining a job or any source of income. She was also hospitalized again from June 13, 2004 to July 1 for mental health issues, and her doctor recommended that she receive an additional six months of care before the doctor could make any recommendations regarding the care of E.G. It was noted in the plan that the mother had completed all of the other goals, but the agency was concerned about her ongoing mental health issues and that the mother "does not like taking her medication because it makes her sick." After an August 2004 panel review, a concurrent plan of reunification and termination was recommended. The mother's continued mental health issues were noted, as was the fact that she was about to be evicted from her apartment. In September 2004, the juvenile court held a judicial review hearing recognizing the concurrent reunification and termination plan, finding that the mother had failed to complete her case plan, and continuing custody of E.G. with DFACS.
DFACS filed another deprivation petition in November 2004, and following a hearing, the juvenile court again determined that E.G. was deprived. The juvenile court found that
the mother is not able to meet the current needs of the child at this time due to a verifiable mental illness. The mother does not have stable housing or employment. The mother and father have failed to provide financial support for the child. . . . The mother has failed to meet her case plan goals for reunification.
This February 2005 order was also not appealed. In March 2005, DFACS filed a petition to terminate the mother's parental rights.
At the July 13, 2005 termination hearing, a psychologist who evaluated the mother two months earlier, testified that the mother had been hospitalized four times, the most recent in July 2004, and that she presently experienced hallucinations despite medication. He indicated that her parenting inventory scores reflected that the mother might not be able to attend to E.G.'s emotional and psychological needs. He observed that the mother did not demonstrate any physical affection toward E.G. during their visits, and that there was a definite loss of attachment between mother and child. He testified that despite the mother's parenting classes, her parenting skills had not increased and she held poor and inconsistent parenting beliefs. He opined that E.G. was at significant risk for child abuse and neglect based on the mother's history. The doctor diagnosed the mother with a psychotic disorder, narcissistic personality disorder with histrionic personality traits, dependent personality traits and some compulsive features suggesting an obsessive compulsive disorder. The mother reported that she had daily auditory hallucinations, and occasional visual hallucinations, and that she had been diagnosed with schizophrenia in the past.
One of the mother's caseworkers testified that during the time she worked with the mother, the mother had provided proof of employment only once, and that when she attempted to verify the job, she was told the mother no longer worked there. She also testified that the mother did not pay child support, which was required by her case plan. She testified that upon an unannounced visit to the mother's home, she found the home dirty and unfurnished and the mother's three other children who were visiting for the weekend were sleeping in sleeping bags. At a later visit, the home was cleaner.
There was testimony that the mother had three different residences in 2004 and was currently staying in transitional housing. She also failed to meet her case plan employment *343 requirements and was reportedly presently employed as an on-call banquet server, but had not worked yet. The mother is presently in a two-year clinical study program for schizophrenia, and has completed one year of the program. A letter from the doctor conducting the study was submitted as evidence at the hearing, and the doctor noted improvement in the mother, but opined that she lacked "full insight into the demands of 24 hour childcare. We also have concerns about her current financial ability to provide for her child given very limited resources and family support."
Following the hearing, the juvenile court found that the mother had failed to fulfill many of the goals of her reunification plan, including the housing, employment, and child support requirements. It also found that she suffered from a verifiable mental illness that prevents her from parenting E.G. The court also found that there was a significant chance that the child would be abused or neglected if he was returned to the mother's care. After finding that termination of the mother's parental rights to E.G. was in the child's best interest, the court entered an order terminating her rights.
1. The termination of parental rights is a two-step procedure. OCGA § 15-11-94(a). The juvenile court must find parental misconduct or inability, based on clear and convincing evidence that (i) the child is deprived, (ii) lack of parental care caused the deprivation, (iii) such causes are likely to continue, and (iv) the continued deprivation is likely to cause serious harm to the child. OCGA § 15-11-94(b)(4)(A)(i)-(iv). See In the Interest of D.L.S., 271 Ga.App. 311, 312-313, 609 S.E.2d 666 (2005). Next, if these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering his physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home. OCGA § 15-11-94(a). In the Interest of A.L.E., 248 Ga.App. 213, 216(1), 546 S.E.2d 319 (2001). Applying these factors to this case, we find ample evidence to support the juvenile court's finding of parental misconduct or inability.
(a) The child is deprived. Appellant is bound by the juvenile court's prior deprivation orders, which were never appealed. In the Interest of T.P., 270 Ga.App. 700, 704(1), 608 S.E.2d 43 (2004).
(b) Lack of proper parental care or control caused the deprivation. In making this determination, the juvenile court may consider "[a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child." OCGA § 15-11-94(b)(4)(B)(i). See In the Interest of S.W.J.P.D., 279 Ga.App. 226, 229(1)(b), 630 S.E.2d 824 (2006).
Here, the court determined that the mother had a medically verifiable mental illness which would prevent her from parenting E.G. Evidence showed that the mother suffered from medically diagnosed mental illnesses, specifically, major depressive disorder with psychotic features and schizophrenia. A psychologist concluded that her ability to parent was low, and opined that E.G. was at significant risk for child abuse and neglect based on the mother's history. Her treating psychiatrist also expressed concern about her ability to parent E.G.
"In addition, evidence that the mother had [three] other children who were not in her care or support indicates that she would be unable to care for [E.G.]." In the Interest of A.C., 272 Ga.App. 165, 167(1)(c), 611 S.E.2d 766 (2005). Further, in cases in which the child is not in the custody of the parent who is the subject of the termination proceeding, the juvenile court also is required to consider whether the parent, without justifiable cause, failed to comply with a court-ordered reunification plan. OCGA § 15-11-94(b)(4)(C)(iii). Here, the evidence establishes that the mother unjustifiably failed to comply with her case plan goals.
(c) The cause of the child's deprivation is likely to continue. It is appropriate for a trial court to consider a parent's past conduct in determining whether the deprivation is likely to continue. In the Interest of C.B.H., 262 Ga.App. 833, 836(1), 586 *344 S.E.2d 678 (2003). As noted above, the mother failed to comply with her case plan. Additionally, the mother failed to maintain stable housing or employment and was shown to have difficulty developing parenting skills. Moreover, there was testimony that the mother would have difficulty developing adequate skills in light of her mental and emotional deficiencies.
(d) Continued deprivation likely to cause harm to child. There is sufficient evidence to support the juvenile court's conclusion that continued deprivation is likely to cause serious harm to the child. Here, a psychologist testified that the mother's mental illness would be detrimental to the child by causing a high risk for abuse or neglect. The same evidence demonstrating that the child's deprivation is likely to continue also supports a finding that continued deprivation would cause serious physical, mental, or moral harm to the child. In the Interest of D.S., 247 Ga.App. 569, 573, 545 S.E.2d 1 (2001). Thus, the fourth factor in determining parental misconduct or inability was satisfied. OCGA § 15-11-94(b)(4)(A)(iv). Here, the record contains evidence that the mother suffers from serious and longstanding mental problems that prevent her from caring for E.G., despite her expressed desire to do so. The evidence supports the juvenile court's conclusion that E.G. was deprived, the deprivation was attributable to a lack of proper parental care, the deprivation was likely to continue, and it was likely to cause serious mental, emotional, and moral harm to him.
2. Having found clear and convincing evidence of parental misconduct or inability, the trial court properly determined that termination of appellant's parental rights was in the child's best interest. OCGA § 15-11-94(a). "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citation and punctuation omitted.) In the Interest of C.N.H., 238 Ga.App. 50, 53-54(2), 517 S.E.2d 589 (1999). Further, the evidence showed that E.G. had been in foster care since his birth and is thriving. There is no reason to believe that the mother can overcome her mental health challenges and provide, in the near future, a safe and stable home for E.G. The child should not be forced to wait any longer for a permanent home.
3. The mother also contends that she was denied effective assistance of counsel because certain objectionable hearsay testimony was presented during the hearing.
"While termination of parental rights cases are more civil in nature than criminal, parents facing termination of their rights have been afforded some of the protections to which criminal defendants are entitled." (Citations and punctuation omitted.) In the Interest of A.H.P., 232 Ga.App. 330, 334(2), 500 S.E.2d 418 (1998). This includes providing to indigent parents "effective representation at all stages of any proceeding involving the termination" of their parental rights. Id.
In order to prevail on a claim of ineffective assistance of counsel the mother must show that her counsel's performance was deficient and that the deficient performance was prejudicial to her defense. To meet the first prong of this test, the mother must overcome the strong presumption that counsel's performance fell within a wide range of professional conduct and that counsel's decisions were not made in the exercise of reasonable professional judgment.
(Citations and punctuation omitted.) Id.
Regarding the mother's claim that trial counsel was ineffective, no motion for new trial was filed on her behalf, so no claim of ineffective assistance of counsel was raised in the court below and this issue has not been ruled on. "It is axiomatic that a claim of ineffectiveness of trial counsel must be asserted at `the earliest practicable moment.'" Bailey v. State, 264 Ga. 300, 443 S.E.2d 836 (1994). However, the mother filed the notice of appeal pro se, and appellate counsel was not appointed to the case until a month after the notice of appeal was filed. Thus, the record shows that the instant appeal is the "earliest practicable moment" that appellate counsel could raise an ineffective assistance claim against trial *345 counsel. Even so, "[i]n cases such as this, when the issue can be decided from the record on appeal, a remand to the trial court for a ruling on this issue would be `wasteful of judicial and legal resources' and `would serve no useful purpose.'" (Citations omitted.) Forsman v. State, 239 Ga.App. 612, 615(8), 521 S.E.2d 410 (1999).
Here, even if the juvenile court did consider hearsay, this will not constitute reversible error if the other evidence introduced at the termination hearing, excluding the hearsay, supports the juvenile court's findings and conclusions. See In the Interest of T.A.M., 280 Ga.App. 494, 499(3), 634 S.E.2d 456 (2006). Moreover, in a nonjury trial, we must presume that the court is able to select and consider the properly presented evidence and dismiss the remainder. This court will reverse the court below only if no legal evidence supports the lower court's ruling. See In the Interest of C.G.B., 242 Ga.App. 705, 711(4), (5), 531 S.E.2d 107 (2000).
Because a rational trier of fact could have found that the mother's rights should be terminated, we affirm the juvenile court's decision. In the Interest of C.N.S., 248 Ga. App. 84, 87, 545 S.E.2d 633 (2001).
Judgment affirmed.
ANDREWS, P.J., and BERNES, J., concur.