984 A.2d 420

**In re ADOPTION/GUARDIANSHIP OF CHADEN M.**

**No. 586 Sept.Term, 2009.**

Court of Special Appeals of Maryland.

Dec. 1, 2009.

412

414

Juan P. Reyes (Nancy S. Forster, Public Defender, on the brief), Baltimore, MD, for Appellant.

David Craig Wright (Child Advocacy Project Eastern Shore, Inc., on the brief), Chestertown, MD, for Appellee.

Panel: SALMON, ZARNOCH and J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

J. FREDERICK SHARER, Judge (Retired Specially Assigned).

In the Circuit Court for Baltimore City, Division of Juvenile Causes, the Baltimore City Department of Social Services ("the Department") filed a Petition for Guardianship with the Right to Consent to Adoption or Long Term Care Short of Adoption ("the Petition"), seeking to terminate the parental rights of April C. and Saint Sydney M. to Chaden M.

April C., represented by an attorney from the Office of the Public Defender, filed an objection to the Petition, but did so beyond the time provided by the juvenile court's Show Cause Order. The Department successfully moved to strike that late objection and the court granted guardianship to the Department. April C. and Chaden M. now contend in this Court that April C. received ineffective assistance of counsel, and is entitled to reversal.[1]

Deciding an issue of first impression, we shall hold that, where there is a right to assistance of counsel in a termination of parental rights case, that right includes the right to the effective assistance of counsel. We also conclude that April C. received ineffective assistance of counsel because of the late filing, and shall remand this case in order to permit April C. to file a belated objection to the Petition.

## PROCEDURAL HISTORY

Chaden M. was born on January 14, 2006, the son of April C. and Saint Sydney M.[2] On January 3, 2007, for reasons not stated in the record, Chaden M. was placed in foster care with the Department. Thereafter, on February 28, 2007, again for reasons not stated in the record, Chaden M. was found to be a

---

1. In her brief, April C. asks: "[D]id Appellant receive ineffective assistance of counsel where her attorney failed to properly object to the petition for guardianship within the requisite time period?"

2. Chaden M.'s father, Saint Sydney M., has not filed a brief in this Court. He eventually, albeit conditionally, consented to the guardianship, provided that Chaden M. was adopted by Evelyn M.

Child In Need of Assistance ("CINA"), and committed to the care and custody of the Department.

On December 1, 2008, the Department filed the Petition that is the subject of this appeal, alleging that April C. may have a disability that made her incapable of consenting to the Petition, or participating in the guardianship/termination proceeding. The Petition alleged that the nature of April C's disability was related to mental health issues.

That same day, the juvenile court issued a Show Cause Order to April C. ("Show Cause Order"), warning her that:

2. RIGHT TO OBJECT; TIME FOR OBJECTING.

If this Order is served on you by February 2, 2009, and if you wish to object to the guardianship, you must file a notice of objection with the Clerk of the Court at the Baltimore City Juvenile Justice Center, 300 North Gay Street, Room A3320, Baltimore, Maryland, 21202 within 30 days after this Order is served on you. For your convenience, a form notice of objection is attached to this Order. WHETHER THE PETITION REQUESTS ADOPTION OR GUARDIANSHIP, IF YOU DO NOT MAKE SURE THAT THE COURT RECEIVES YOUR NOTICE OF OBJECTION ON OR BEFORE THE DEADLINE STATED ABOVE, YOU HAVE AGREED TO A TERMINATION OF YOUR PARENTAL RIGHTS.

Pertinent to the issues on appeal, the Show Cause Order also informed April C. that she: (a) had a right to consult an attorney; (b) may have already had an attorney appointed for her based on statements in the Petition; and, (c) may be entitled to have an attorney appointed by the court on certain grounds, including, but not limited to, the following:

You are a parent of the person to be adopted or for whom a guardian is sought and:

A. You are under 18 years of age; or

B. Because of the disability, you are incapable of consenting to the adoption or guardianship or of participating effectively in the proceeding; or

C. You object to the adoption and cannot afford to hire an attorney because you are indigent.

The Show Cause Order then warned:

IF YOU BELIEVE YOU ARE ENTITLED TO HAVE THE COURT APPOINT AN ATTORNEY FOR YOU AND YOU WANT AN ATTORNEY, YOU MUST NOTIFY THE COURT BEFORE THE TIME YOUR NOTICE OF OBJECTION MUST BE FILED. IF YOU DO NOT MAKE SURE THAT THE COURT RECEIVES YOUR NOTICE OF OBJECTION ON OR BEFORE THE DEADLINE STATED, YOU HAVE AGREED TO A TERMINATION OF YOUR PARENTAL RIGHTS.

On the same day the Petition and Show Cause Orders were filed, the Department also filed a Request for the Appointment of an Attorney to represent April C. Two days later, on December 3, 2008, April C. was personally served with the Show Cause Order and Petition. Additionally, April C.'s attorney, Cheryl Jeanine Smith, of the Office of the Public Defender, entered her appearance the same day.[3]

On March 3, 2009, more than 30 days after the Show Cause Order was served on April C., April C.'s attorney filed a Notice of Objection to the Petition alleging that April C. was "ready, willing and able to care" for Chaden M., and that "the termination of the natural mother's parental rights is not in [Chaden M.'s] best interest."

The Department then filed a Motion to Strike Late Objection, alleging that the Notice of Objection was filed beyond the 30 days permitted under Md. Rule 9–107 ("any notice of objection to an adoption or guardianship shall be filed within 30 days after the show cause order is served").

---

**3.** The record, as well as the Department's brief in this Court, indicates that Cheryl Jeanine Smith was April C.'s CINA attorney. The Department indicates that Ms. Smith was served pursuant to Md.Code (1984, 2006 Repl. Vol.), § 5–316(b)(2) of the Family Law Article, which requires the petitioner to serve the Show Cause Order on, *inter alia,* "each living parent's last attorney of record in the CINA case ..."

On March 27, 2009, April C.'s attorney filed a Response to Motion to Strike Objection, stating that it was "impossible" for April C. to file a Notice of Objection within 30 days of being personally served because she was arrested and detained on criminal charges until February 26, 2009.[4] The Response also stated that on February 5, 2009, after meeting with April C. at the Baltimore City Women's Detention Center, her attorney agreed with the Department's initial assessment of a mental disability and therefore did not challenge the allegations in the Petition. Counsel's Response also alleged the following:

8. That upon the entry of appearance by undersigned counsel on or about December 3, 2009, the case proceeded to the setting of a Pretrial Conference, as the entry of counsel's appearance served as Respondent's Mother's Objection to the termination of her parental rights.

9. That at the Pretrial Conference on February 20, 2009, the [Department's] counsel averred that the agency was withdrawing its allegation of disability of Respondent's Mother yet failed to timely file an Amended Petition for Guardianship withdrawing the allegation of her disability.

10. That undersigned counsel filed a Notice of Objection on behalf of Respondent's Mother within thirty days of the [Department's] oral notice of its withdrawal of the allegation of disability with respect to Respondent's Mother.

11. That the practical effect of the [Department's] oral amendment is to deny Respondent's Mother the right to participate in the Termination of Parental Rights proceeding, thereby substantively impairing her right to due process. The Maryland Court of Appeals has said that "... when the State moves to abrogate that parent's fundamental liberty in the care, custody, and management of their children, it must provide parents with fundamentally fair proce-

4. During the hearing before the juvenile court, counsel proffered that April C. was arrested on December 25, 2008, which we note is 22 days after April C. was served and after counsel entered her appearance on April C.'s behalf.

dures." *See In re Adoption/Guardianship,* No. 93321055, 344 Md. 458, 491, 687 A.2d 681, 697 (1997).

On May 7, 2009, the juvenile court held a hearing on two matters then pending: 1) the issue of April C.'s disability within the meaning of the pertinent rules, and 2) the Department's motion to strike April C.'s late objection.[5] After first hearing testimony and considering argument on the issue of April C.'s disability, the court concluded that April C. was not disabled.[6]

The Department then requested the court to grant its motion to strike April C.'s late-filed objection to the Petition and Show Cause Order. April C.'s counsel asked the court to deny the motion, asserting:

And I'm going to do so for two reasons. 1) the Department in its petition had alleged disability and asked specifically that our office appoint an attorney. And at that point there was an acquiesced [sic] that she needed counsel and that consequently by the policy of this Court, I was appointed. So therefore I did not, because I acquiesced because I met with Ms. C. shortly thereafter once I learned that she was incarcerated, I was able to fit in and meet with her and discerned that she did have some disability. I didn't know all of the details, but I could discern as a layperson that there was an issue.

So therefore I went, and as is the policy here, I went on the fact that once my appearance is entered, it serves in effect as my client's objection to the termination of her parental rights. . . .

After the juvenile court and counsel discussed whether there was, indeed, such a policy that an entry of appearance by the public defender serves as a statutory objection, April C.'s counsel also raised a due process issue, arguing that April

---

**5.** April C. did not attend this hearing, but was represented by counsel.

**6.** Although April C.'s notice of appeal initially challenged this ruling, it is not being pursued on appeal.

C. was denied due process because of the way the proceedings were conducted:

[APRIL C.'S COUNSEL]: And I think what's most pivotal here, the risk of error that here that's been created by the procedure in this case is to effectively deny Ms. C. her right to have counsel. On the one hand the Department is saying oh, she's disabled, she can not participate. They then withdraw that at the point where its beyond the time frame that she could object. If there is a challenge to the disability, the rule says the party is to promptly notify the parties and the Court so that there can be a disability hearing in order to determine whether she needs to be appointed counsel.

Counsel for the Department has indicated they filed their petition in December. It is not until February that they then by way of oral motion in Court to say oh no, now we've changed our mind. She's not disabled, we now want to withdraw that. So in effect, withdraws Ms. C.'s ability to have the assistance of counsel by our office.

THE COURT: But when you got a copy of the petition in December, what was your responsibility then?

[APRIL C.'S COUNSEL]: My responsibility then was to go out, to try to locate my client, to speak with her about what's going on. And to discern whether or not she had the disability. And I did do that and I acquiesced, I wasn't objecting to the Department's allegation.

THE COURT: But those are two separate things, I guess that's what I'm trying to understand. The issue of disability is limited to whether she's entitled to counsel. Beyond that, there's a statutory requirement that she file a response within a given period of time. Those are two separate issues. They're not one in the same. That's how I'm receiving your argument. Basically you're saying that she's being denied due process because the Department decided to withdraw its belief that she's disabled.

April C.'s counsel then clarified that it was her position that the Department needed to withdraw its suggestion of disabili-

ty before the expiration of the 30 days in which to file an objection. When asked to cite authority in support of that argument, counsel responded, "I only have that the word under which the statute provides under the Rule 9–105 that it should be prompt." Finally, counsel added that April C. was unable to object to the Show Cause Order and Petition because she was incarcerated on December 25, 2008.

The Department reiterated that April C. and her attorney were served with the Petition and Show Cause Order, and that no objection was filed within the required 30 days. The court ruled:

It's clear that no timely objection was filed in this case. The statute's clear, the parent needs to object within 30 days of service, the parent didn't do so. I'm not persuaded by the fact that she was incarcerated on the tail end of the period.

Her Counsel was advised of the filing of the petition and frankly the law is what it is. Didn't note an objection and has not appeared today to show any interest in this case in any event. And her failure to appear twice for a disability hearing, coupled with the fact that she received the notice of the petition and was given information regarding objecting 22 days or so before she was incarcerated suggests that she was in no hurry.

An anxious parent who wanted to preserve the parental rights probably would have had it in the mail within a day or two. And so I just don't find any basis for denying the Department's request. So I will strike the late objection. I'm not persuaded that the Department through withdrawing the disability request or disability allegation has somehow prejudiced the mother.

Those are two separate issues. One having to do with whether Mother is entitled to representation at the State's expense in order to preserve her rights. And the other is having to do with what the General Assembly has said a person need to do in order to preserve parental rights in this type of situation. So the Motion to Strike is granted.

The juvenile court memorialized its oral ruling in a written order, directing that the Department be appointed as guardian for Chaden M. with the right to consent to adoption and the right to consent to long-term care short of adoption, and that April C. and Saint Sydney M. had the right to notice of the status of Chaden M. subsequent to the guardianship order.

Additionally, Evelyn M. was granted limited guardianship of Chaden M., but not to abridge the Department's authority as guardian. The court also incorporated the post-adoption contact agreement negotiated between Saint Sydney M. and the prospective adoptive parents. Finally, the juvenile court found that the Department made reasonable efforts in that it "filed petition for guardianship, served all parties, proceeded to complete the case and located prospective adoptive resource." This appeal followed.

## DISCUSSION

April C. and Chaden M. both contend that the right to counsel in termination of parental rights ("TPR") proceedings under Title 5 of the Family Law Article necessarily includes the right to effective assistance of counsel. Pursuant to that right, April C. specifically asserts that she received ineffective assistance of counsel when her appointed counsel failed to timely object to the Petition on her behalf, pursuant to Md. Code (1984, 2006 Repl. Vol., 2009 Supp.), Family Law Article ("FL"), § 5–320(a).[7] The Department responds that April C.

---

7. FL § 5–320(a) provides:

 (a) *Consent and acquiescence or best interests.*—A juvenile court may grant guardianship of a child only if:

 (1) (i) the child does not object;

 (ii) the local department:

 1. filed the petition; or

 2. did not object to another party filing the petition; and

 (iii) 1. each of the child's living parents consents:

 A. in writing;

 B. knowingly and voluntarily, on the record before the juvenile court; or

 C. by failure to file a timely notice of objection after being served with a show cause order in accordance with this subtitle;

had no right to counsel during the time period when an objection to the Petition was due, and that, therefore, April C. had no corresponding right to the effective assistance of counsel.

### The Right to Counsel

Generally, the right to counsel is guaranteed in criminal cases by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. *See Gideon v. Wainwright,* 372 U.S. 335, 342-43, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Walker v. State,* 391 Md. 233, 245, 892 A.2d 547 (2006). It is also clear that the right to counsel in such cases includes "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, a case involving the termination of parental rights is a civil proceeding, and, therefore, Sixth Amendment and Article 21 protections do not apply. *See In re Adoption/Guardianship No. 6Z980001,* 131 Md.App. 187, 192, 748 A.2d 1020 (2000) (holding that the Sixth Amendment right to be present during proceedings is inapposite to TPR proceedings because they are civil proceedings). Thus, if there is a right to effective assistance of counsel in TPR proceedings, specifically a proceeding under Title 5, Subtitle 3, Part II or Part III of the Family Law Article, then that right must originate in the Maryland statutes.[8]

The Court of Appeals has stated:

---

2. an administrative, executive, or judicial body of a state or other jurisdiction has granted a governmental unit or person other than a parent the power to consent to adoption, and the unit or person consents; or

3. parental rights have been terminated in compliance with the laws of a state or other jurisdiction, as described in § 5-305 of this subtitle; or

(2) in accordance with § 5-323 of this subtitle, the juvenile court finds termination of parental rights to be in the child's best interests without consent otherwise required under this section or over the child's objection.

8. While we are primarily concerned with the right to counsel in this case, we recognize that other constitutional protections may apply in

In statutory interpretation, our primary goal is always to "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " Further, whenever possible, an interpretation should be given to the statutory provisions which does not lead to absurd consequences. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. If however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose.

*Barbre v. Pope,* 402 Md. 157, 172–73, 935 A.2d 699 (2007) (citations omitted).

The facts before us implicate two pertinent Maryland statutes providing for the assistance of counsel in guardianship and adoption proceedings. Pursuant to provisions of the Public Defender Act, codified in Md.Code (2001, 2008 Repl. Vol.), Criminal Procedure ("CP") §§ 16–101 to 16–403, representation shall be provided in the following cases:

(1) Indigent defendants or parties shall be provided representation under this title in:

(i) a criminal or juvenile proceeding in which a defendant or party is alleged to have committed a serious offense;

---

TPR proceedings. *See In re Yve S.,* 373 Md. 551, 566, 819 A.2d 1030 (2003) ("Maryland has consistently echoed the Supreme Court, declaring a parent's liberty interest in raising a child a fundamental one that cannot be taken away unless clearly justified"); *see also In re Blessen H.,* 163 Md.App. 1, 17, 877 A.2d 161 (2005) (clarifying that the process due in a TPR proceeding is "not the degree of process due a criminal defendant, probationer, or alleged juvenile delinquent who faces the loss of personal liberty"), *aff'd,* 392 Md. 684, 898 A.2d 980 (2006).

(ii) a criminal or juvenile proceeding in which an attorney is constitutionally required to be present prior to presentment being made before a commissioner or judge;

(iii) a postconviction proceeding for which the defendant has a right to an attorney under Title 7 of this article;

(iv) any other proceeding in which confinement under a judicial commitment of an individual in a public or private institution may result;

(v) a proceeding involving children in need of assistance under § 3–813 of the Courts Article; or

(vi) a family law proceeding under Title 5, Subtitle 3, Part II or Part III of the Family Law Article, including:

1. for a parent, a hearing in connection with guardianship or adoption;

2. a hearing under § 5–326 of the Family Law Article for which the parent has not waived the right to notice; and

3. an appeal.

CP § 16–204(b).[9]

■ Under this statute, an indigent party shall be provided assistance of counsel in a family law proceeding concerning either Guardianship under Part II of Title 5, Subtitle III (*see* FL §§ 5–313 to 5–328), or Adoption without Prior Termination of Parental Rights under Part III of Title 5, Subtitle III (*see* FL §§ 5–331 to 5–342). The scope of the representation includes hearings in connection with guardianship and adoption, a guardianship review hearing under FL § 5–326, where the parent has not waived notice, and an appeal. *See* CP § 16–204(b)(1)(vi).

In addition to the provisions for indigent parties under the Public Defender Act, the Family Law Article also provides for assistance of counsel for a minor parent or a parent with a certain disability in guardianship or adoption cases:

---

9. Section 16–204 applies in the instant action because the Petition was filed on December 1, 2008. Section 16–204 became effective on October 1, 2008. *See* 2008 Md. Laws, ch. 15 § 11, p. 362.

(1) Unless the public defender is required under § 16–204 of the Criminal Procedure Article to provide representation, in a case under Part II or Part III of this subtitle, a juvenile court shall appoint an attorney to represent a parent who:

(i) has a disability that makes the parent incapable of effectively participating in the case; or

(ii) when a petition for guardianship or adoption is filed or consent to guardianship or adoption is given, is a minor.

(2) To determine whether a disability makes a parent incapable of effectively participating in a case, a juvenile court, on its own motion or motion of a party, may order examination of the parent.

FL § 5–307(a); *see also* Md. Rule 9–105(b) (stating procedures for appointment of an attorney for a disabled party).

■ Thus, in addition to the provisions of the Public Defender Act providing a statutory right to counsel for indigent parents, *see* CP § 16–204(b)(1)(vi), FL § 5–307(a) also makes clear that there exists a statutory right to counsel in guardianship or adoption cases where a parent, whether or not indigent, has a disability that makes him or her incapable of effectively participating in the case, or where the parent is a minor. *See Barbre,* 402 Md. at 173, 935 A.2d 699 ("If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends"); *accord Downes v. Downes,* 388 Md. 561, 571–72, 880 A.2d 343 (2005); *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478 (2000); *Gargliano v. State,* 334 Md. 428, 435, 639 A.2d 675 (1994). Therefore, where the public defender is otherwise required by statute to represent a parent in a guardianship or adoption proceeding, or where the juvenile court has appointed counsel, there exists a statutory right to counsel. As we shall discuss, we conclude that the right to counsel also includes the corresponding right to the effective assistance of counsel.

The Court of Appeals discussed certain provisions of the Public Defender Act in *State v. Flansburg,* 345 Md. 694, 694

A.2d 462 (1997).[10] There, the Court addressed whether the respondent, Flansburg, had a right under Maryland law to the effective assistance of counsel in connection with a motion for modification of the sentence imposed at a probation revocation proceeding pursuant to Md. Rule 4–345(b). *Flansburg,* 345 Md. at 696, 694 A.2d 462.

In 1985, Flansburg pleaded guilty to a second degree sex offense and was sentenced to seven years imprisonment, with four years suspended, to be followed by five years probation. *Id.* In 1990, while on probation, Flansburg was convicted of battery and second degree murder. *Id.* Subsequently, and while represented by the Office of the Public Defender, Flansburg's probation was revoked and the previously suspended portion of his prior sentence was reimposed, to be served consecutively to a fifteen year sentence imposed for the murder conviction. *Id.*

Following revocation of probation, Flansburg made two timely written requests that his attorney file a motion for modification of sentence pursuant to Md. Rule 4–345(b). *Flansburg,* 345 Md. at 696, 694 A.2d 462. That provision, since recodified as Md. Rule 4–345(e), permits a court to modify a sentence upon motion filed within 90 days after its imposition. *See* Md. Rule 4–345. Flansburg's attorney failed to timely file the motions, and Flansburg thereafter filed a petition for post-conviction relief, asserting he was denied effective assistance of counsel. *Flansburg,* 345 Md. at 697, 694 A.2d 462.

The Court of Appeals began its discussion by assuming, *arguendo,* that neither the federal right to effective assistance of counsel or the Maryland Declaration of Rights applied to a motion to modify a sentence reimposed upon a revocation of probation. *Id.* at 698–99, 694 A.2d 462. Nevertheless, the Court found such a right under Maryland statutory provisions, including the Public Defender Act. *Flansburg,* 345 Md. at

---

**10.** The Court in *Flansburg* considered the predecessor statute to CP § 16–204—Md. Code (1957, 1997 Repl. Vol.) Article 27A, § 4(b). *Flansburg,* 345 Md. at 699–703, 694 A.2d 462.

699, 694 A.2d 462. After setting forth the pertinent statutory language, the Court stated:

As the statutory language demonstrates, the right to counsel under the Public Defender Act is significantly broader than the constitutional right to counsel. Criminal proceedings constitutionally requiring the presence of counsel constitute only one of the five categories of required representation set forth in the Public Defender Act.

*Id.* at 700, 694 A.2d 462 (citations omitted).

Responding to the State's argument that even if Flansburg had a statutory right to counsel, that right did not include the same type of right to effective assistance of counsel associated with a constitutional right to counsel, the Court stated:

This argument was fully answered by the Court in *Wilson v. State,* 284 Md. 664, 671, 399 A.2d 256, 260 (1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 275 (1980). There, referring specifically to the right to counsel under the Public Defender Act, Judge Orth for the Court stated:

"Entitlement to assistance of counsel would be hollow indeed unless the assistance were required to be effective. It follows that a criminal defendant has the right to the effective assistance of counsel on the direct appeal of the judgment entered upon his conviction of a serious crime."

Regardless of the source, the right to counsel means the right to the effective assistance of counsel. *See, e.g., Kimmelman v. Morrison,* 477 U.S. 365, 377, 106 S.Ct. 2574, 2584, 91 L.Ed.2d 305, 321 (1986); *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763, 773 n. 14 (1970); *Grandison v. State,* 341 Md. 175, 264, 670 A.2d 398, 441 (1995); *Brosan v. Cochran,* 307 Md. 662, 673, 516 A.2d 970, 976 (1986).

*Flansburg,* 345 Md. at 703, 694 A.2d 462; *accord Stovall v. State,* 144 Md.App. 711, 721, 800 A.2d 31 (citing *Flansburg,* 345 Md. at 703, 694 A.2d 462), *cert. denied,* 371 Md. 71, 806 A.2d 681 (2002); *see also Harris v. State,* 160 Md.App. 78, 98, 862 A.2d 516 (2004) ("The right to effective assistance of counsel applies even when the right arises under statutory

law"), *cert. denied,* 386 Md. 181, 872 A.2d 47, *cert. denied,* 546 U.S. 979, 126 S.Ct. 575, 163 L.Ed.2d 463 (2005).

The Court of Appeals held that Flansburg had a right to effective assistance of counsel in connection with his request that counsel file a motion for modification of sentence. *Flansburg,* 345 Md. at 703, 694 A.2d 462. The Court remedied the violation of this right by permitting Flansburg to file a belated motion for reconsideration. *Id.* at 705, 694 A.2d 462. Certainly a parent deserves no less in a proceeding where a fundamental and constitutionally protected liberty interest, such as the right to raise one's child, is at issue. *See In re Yve S.,* 373 Md. at 566, 819 A.2d 1030. Therefore, we hold that the right to assistance of counsel in a TPR case includes the right to effective assistance of counsel.[11]

### Effectiveness of Counsel—Analysis

In analyzing a claim of ineffectiveness of counsel, the Supreme Court, in *Strickland v. Washington, supra,* set forth a two-prong test. According to *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing

---

11. To be sure, the recognition of a right to the effective assistance of counsel in a TPR proceeding presents a special challenge to our courts, not the least of which is balancing the protection of a parent's fundamental liberty interest with the need for finality in order to permit the adoption of children when parental rights have been terminated. It presents important substantive and procedural issues that are worthy of study and consideration outside a single case. Because it appears that ineffective assistance claims are on the increase, guidance from the Court of Appeals and the Rules Committee or the General Assembly will be appropriate. For a comprehensive review of ineffective assistance of counsel claims in TPR proceedings, see Susan Calkins, *Ineffective Assistance of Counsel in Parental–Rights Termination Cases: The Challenge for Appellate Courts,* 6 J. App. Prac. & Process 179 (2004).

that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

The Court of Appeals, in *Harris v. State*, 303 Md. 685, 496 A.2d 1074 (1985), applied the *Strickland* test to evaluate the effectiveness of trial counsel in criminal cases. Later, the *Strickland* test was applied in juvenile delinquency proceedings. *See In re Parris W.*, 363 Md. 717, 724, 770 A.2d 202 (2001) (stating that the Due Process Clause of the Fourteenth Amendment requires effective assistance of counsel in juvenile delinquency proceedings) (citing *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)).

### *Other Jurisdictions*

Several of our sister states have addressed the issue of ineffective assistance of counsel in TPR proceedings, and many have also applied the *Strickland* analysis. *Compare, e.g., Jones v. Arkansas Dep't of Human Servs.*, 361 Ark. 164, 205 S.W.3d 778, 794 (2005) (concluding that right to counsel in termination proceedings includes right to effective assistance of counsel and adopting the *Strickland* standard for ineffectiveness); *People in Interest of V.M.R.*, 768 P.2d 1268, 1270 (Colo.App.1989) (concluding that *Strickland* applies to termination proceedings); *In the Interest of A.H.P.*, 232 Ga.App. 330, 500 S.E.2d 418, 421–422 (1998) (recognizing that an indigent parent has a right to effective assistance of counsel in a termination proceeding and applying the *Strickland* analysis to such a claim); *In re R.G.*, 165 Ill.App.3d 112, 116 Ill.Dec. 69, 518 N.E.2d 691, 700–701 (1988) (stating that right to effective assistance of counsel in termination proceedings is guided by the standards set forth in *Strickland*), *appeal denied*, 119 Ill.2d 557, 119 Ill.Dec. 397, 522 N.E.2d 1256 (1988); *In Interest of D.W.*, 385 N.W.2d 570, 579 (Iowa 1986) (assuming that due process requires effective assistance of counsel in termination proceeding and applying same standards otherwise applicable in criminal actions); *In Interest of Rushing*, 9 Kan.App.2d 541, 684 P.2d 445, 449–450 (1984) (applying *Strickland* in a severance of parental rights case); *In re Heston*, 129 Ohio App.3d 825, 719 N.E.2d 93, 95 (1998) (recognizing that

termination of parental rights affects a loss of basic civil rights and that the criminal test for ineffectiveness is equally applicable in such proceedings); *In re K.L.C.*, 12 P.3d 478, 480–481 (Okla.Civ.App.2000) (applying *Strickland* standard for evaluating ineffectiveness in a parental rights termination case); *In the Interest of M.S.*, 115 S.W.3d 534, 544–45 (Tex.2003) (holding that there is a right to effective assistance of counsel in parental-rights termination proceedings and adopting the standards set forth in *Strickland*); *State in Interest of E.H. v. A.H.*, 880 P.2d 11, 13 (Utah App.1994) (adopting *Strickland* to determine a claim for ineffective assistance in termination of parental rights proceedings), *cert. denied,* 890 P.2d 1034 (Utah 1994); *with In re Geist,* 310 Or. 176, 796 P.2d 1193, 1200–1203 (1990) (declining to apply the standards set for in criminal proceedings to termination of parental rights proceedings, and instead, adopting a "fundamental fairness" standard).

Thus, we adopt a *Strickland* analysis.[12]

### Performance

 Regarding the first component of the test of *Strickland,* which is often referred to as the "performance" component, the reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. All circumstances are to be considered. *Id.* at 688, 104 S.Ct. 2052. And, the reviewing court's scrutiny of counsel's conduct "must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. Further:

---

12. While appellant contends that the facts in this case would satisfy either the *Strickland* analysis or the fundamental fairness standard set forth in more detail in the Oregon Supreme Court's *Geist* opinion, we observe that the *Strickland* analysis is generally familiar to both the bench and bar, including public defenders who are called upon to represent parents in TPR proceedings at both the trial and appellate level. The *Strickland* standard, because it presumes competence and places the burden on the claimant to demonstrate a substantial possibility that, but for counsel's unprofessional errors, the result would have been different, should help reduce ineffective assistance of counsel claims, and when they arise, aid in the efficient and timely resolution of such claims.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (citation omitted).

### Prejudice

Further, even if counsel commits a professionally unreasonable error, under the second component of the *Strickland* test, which is frequently referred to as the "prejudice" component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. This is so because "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial." *Id.* at 693, 104 S.Ct. 2052. Maryland case law characterizes the showing necessary to establish prejudice as "a substantial possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Oken v. State,* 343 Md. 256, 284, 681 A.2d 30 (1996); *accord State v. Borchardt,* 396 Md. 586, 603, 914 A.2d 1126 (2007).

To the extent that a direct appeal can expedite appellate review of an ineffective assistance of counsel claim in a TPR case, it is appropriate. But, it has been often stated in criminal cases that a post-conviction proceeding "is the most appropriate way to raise the claim of ineffective assistance of counsel," *Mosley v. State,* 378 Md. 548, 558–559, 836 A.2d 678 (2003), because "ordinarily, the trial record does not illuminate the basis for the challenged acts or omissions of counsel." *In*

*re: Parris W.,* 363 Md. at 726, 770 A.2d 202. However, "where the critical facts are not in dispute and the record is sufficiently developed to permit a fair evaluation of the claim, there is no need for a collateral fact-finding proceeding, and review on direct appeal may be appropriate and desirable." *Robinson v. State,* 404 Md. 208, 219, 946 A.2d 456 (2008); *accord In re Parris W.,* 363 Md. at 726, 770 A.2d 202. Therefore, unless the record before us provides a fair evaluation of appellant's claims, a remand would ordinarily be necessary. *Mosley,* 378 Md. at 558–559, 836 A.2d 678.

Applying that analysis, we conclude that the record before us permits a fair evaluation of whether April C. was denied effective assistance of counsel when her counsel failed to timely file a notice of objection to the Show Cause Order. The late-filing is clear and admitted, albeit qualified by counsel. There is no question of the late-filing being questioned as sound trial strategy. Therefore, there is no need to remand this case for a separate collateral fact-finding proceeding.

Nor are we persuaded by the Department's suggestion that April C. did not have a statutory right to counsel during the 30 notice period. We are reminded that April C.'s appointed counsel had, represented April C. during the CINA proceedings that preceded the TPR proceedings. Moreover, as counsel for April C. in the CINA proceedings, counsel was served with the Petition and Show Cause Order, pursuant to FL § 5–316(b)(2) as the "last attorney of record in the CINA case . . ." Further, the record also indicates that, at least during the critical time frame at issue, all parties were in agreement that April C. may have been disabled and that appointment of an attorney was necessary. Counsel from the Office of the Public Defender, entered her appearance on April C.'s behalf on December 3, 2008. As of that moment, April C. was entitled to the effective assistance of counsel.

Turning to the question of whether April C. was denied the effective assistance of counsel, the procedures that govern guardianships are found in FL §§ 5–313 to 5–528 and

their implementing rules.[13] *See* Md.Code (2006 Repl. Vol., 2008 Supp.), FL §§ 5–313 to 528; *In re Adoption/Guardianship No. 93321055,* 344 Md. 458, 477, 687 A.2d 681 (construing earlier statute), *cert. denied sub nom. Clemy P. v. Montgomery County DSS,* 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997); *In re Adoption/Guardianship of Audrey B.,* 186 Md.App. 454, 463, 974 A.2d 965 (2009).

> This Court recently explained those procedures as follows: Section 5–313(a) mandates that a petition for guardianship be filed prior to a petition for adoption. After such petition is filed, the juvenile court must issue promptly "a show cause order that requires the party to whom it is issued to respond as required under the Maryland Rules." § 5–316(a). Maryland Rule 9–105(e) dictates the form that must be utilized for a show cause order, requiring the show cause order to advise the recipient, *inter alia,* that the consequence of the failure to file the objection with the court means that the recipient of the show cause order has "agreed to a termination of [his or her] parental rights." Maryland Rule 9–107(b)(1) requires that, subject to exceptions not applicable in this case, notice of objection to an adoption or guardianship "shall be filed within 30 days after the show cause order is served."

*In re Adoption/Guardianship of Audrey B.,* 186 Md.App. at 463, 974 A.2d 965.

 Family Law § 5–320 provides the circumstances for the juvenile court's authority to grant a guardianship, and that includes, pertinent to the issues presented in this case, where either of the child's living parents fails "to file a timely notice of objection after being served with a show cause order in accordance with this subtitle[.]" FL § 5–320(a)(1)(iii)(C). Thus, a failure to timely file a notice of objection amounts to a consent to guardianship. *See In re Adoption/Guardianship of Audrey B.,* 186 Md.App. at 465, 974 A.2d 965. Moreover, such

---

**13.** In 2005, the General Assembly passed the Permanency for Families and Children Act of 2005, with an effective date of January 1, 2006. *See* 2005 Md. Laws, ch. 464, § 7 (SB 710).

a deemed consent is irrevocable. *Id.* at 465–476, 974 A.2d 965 (concluding that the General Assembly did not intend to alter existing law providing that deemed consents by operation of law are irrevocable); *see also In re Adoption/Guardianship Nos. T00130003 and T00130004,* 370 Md. 250, 261, 805 A.2d 254 (2002) (stating that, "absent some extraordinary circumstance" implicating due process, a juvenile court has no authority to accept a late-filed objection); *In re Adoption/Guardianship No. 93321055,* 344 Md. at 486, 687 A.2d 681 (concluding that there is no right to revoke a deemed consent under former statute, because that consent arises by operation of law).

▆▆ Given the preclusive effect inherent in a deemed consent, we have little difficulty determining that April C. received ineffective assistance of counsel when her counsel of record failed to timely file a notice of objection to the Show Cause Order and Petition. We also conclude that, absent this deficient performance, there was a substantial possibility that the result of the proceeding may have been different. This is so because, had counsel filed a timely notice of objection to the Show Cause Order, the juvenile court's authority to grant guardianship would not have been pursuant to statutory provisions governing cases where there is consent and acquiescence. Rather, it would have been subject to the provisions required for involuntary termination of parental rights cases, including the Department's burden of proving its case by clear and convincing evidence. *See* FL § 5–323.[14]

▆▆▆ While the controlling factor is "what best serves the interest of the child," *In re Adoption/Guardianship No.*

---

**14.** FL § 5–323(b) provides the following authority for a nonconsensual grant of guardianship: "If, after consideration of factors as required in this section, a juvenile court finds by clear and convincing evidence that a parent is unfit to remain in a parental relationship with the child or that exceptional circumstances exist that would make a continuation of the parental relationship detrimental to the best interests of the child such that terminating the rights of the parent is in a child's best interests, the juvenile court may grant guardianship of the child without consent otherwise required under this subtitle and over the child's objection."

*10941,* 335 Md. 99, 113, 642 A.2d 201 (1994), nevertheless, as the Court of Appeals has stated:

> There is a strong presumption in matters relating to termination of parental rights cases, that the "best interests" of a child, generally, are met by not terminating the parental rights of natural parents. In termination of parental rights cases, it is this presumption that most insures the proper deference to a parent's fundamental and constitutional right to parent.

*In re Adoption/Guardianship Nos. J9610436 and J9711031,* 368 Md. 666, 669, 796 A.2d 778 (2002); *see also Santosky v. Kramer,* 455 U.S. 745, 759, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it"); *Walker v. Gardner,* 221 Md. 280, 284, 157 A.2d 273 (1960) ("[A]doption shall not be granted over parental objection unless that course clearly is justified").

In sum, we hold that the right to assistance of counsel in termination of parental rights cases includes the right to effective assistance of counsel. We also conclude that, in the circumstances of this case, April C., the biological mother of Chaden M., received ineffective assistance when counsel failed to file a timely notice of objection to the Department's Petition and Show Cause Order.

Accordingly, we shall remand this case with direction that April C. be permitted to file a belated objection to the Petition and Show Cause Order.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY, SITTING AS A JUVENILE COURT, REVERSED.**

**CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**